UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | 18 CV 2767 |
| v. | ) | |
| | ) | |
| FUNDS IN THE AMOUNT OF $26,575 | ) | |
| IN UNITED STATES CURRENCY, | ) | |
| | ) | |
| Defendants. | ) | **JURY TRIAL DEMANDED** |

**VERIFIED COMPLAINT FOR FORFEITURE**

The United States of America, by John R. Lausch, Jr., United States Attorney for the Northern District of Illinois, for its verified complaint against the above-named defendant funds alleges in accordance with Supplemental Rule G(2) of the Federal Rules of Civil Procedure as follows:

**Nature of the Action**

1. This is a forfeiture *in rem* brought pursuant to 21 U.S.C. § 881(a)(6), for forfeiture of the defendant funds in the amount of $26,575.

2. This complaint is verified by the attached affidavit of Drug Enforcement Administration ("DEA") Task Force Agent ("TFO") Eddy Sobkowiak, which is fully incorporated herein.

**Jurisdiction and Venue**

3. This Court has jurisdiction over an action commenced by the United States as the plaintiff under 28 U.S.C. § 1345, and over an action for forfeiture *in rem* under 28 U.S.C. § 1355(a).

4. This Court has *in rem* jurisdiction over the defendant funds pursuant to 28 U.S.C.

§ 1355(b)(1)(A), as certain of the acts giving rise to the forfeiture occurred within the Northern District of Illinois.

5. Venue is proper under 28 U.S.C. §§ 1355(b)(1)(A) and 1395(a) as certain of the acts giving rise to the forfeiture occurred within the Northern District of Illinois, and 28 U.S.C. § 1395(b) as the defendant funds were found within the Northern District of Illinois.

6. The defendant funds are subject to forfeiture pursuant to 21 U.S.C. § 881(a)(6) as the funds (i) were furnished and intended to be furnished in exchange for a controlled substance; and/or (ii) are the proceeds from the sale of a controlled substance; and/or (iii) were funds used and intended to be used to facilitate narcotics trafficking, in violation of 21 U.S.C. § 841, *et seq.*

## Specific Allegations

7. On December 4, 2017, DEA law enforcement officers assigned to the DEA Chicago Interdiction Task Force Group ("Group 24") were alerted to the suspicious travel itinerary of Andres Miguel Villarreal ("Villarreal").

8. Specifically, Villarreal was traveling from Lansing, Michigan to Austin, Texas via Chicago Union Station on Amtrak. Villarreal's ticket was purchased within 48 hours of departure.

9. Based upon his training and experience, the affiant states that drug proceed couriers often purchase one-way tickets, travel alone, and usually buy their tickets a day or so prior to the scheduled departure and, in order to avoid detection, purchase private berths. Further, based upon the affiant's training and experience, those who transport illegal drugs, or the proceeds of illegal drug trafficking, often keep them on their person or accompanying bags or suitcases. Based upon the above information, DEA agents sought to interview Villarreal.

10. On December 4, 2017, at approximately 1:15 p.m., members of DEA Group 24 including, Special Agent Kevin Frankel ("SA Frankel") and DEA TFOs Eddy Sobkowiak, Arnold

Martinez, and Torrence Johnson, arrived at Amtrak Train Number 21, Car Number 2120, Room 14. SA Frankel and the TFOs were dressed in casual civilian attire, with no weapons, radios or other police paraphernalia visible.

11. Based upon a Michigan driver's license photo, Villarreal, was identified as he boarded the Amtrak train. At that time, a consensual interview was initiated when TFO Sobkowiak identified himself to Villarreal by displaying government issued DEA credentials and asked to speak with him. TFO Sobkowiak advised Villarreal that he was not under arrest, and not in any kind of trouble. Villarreal agreed to speak with agents.

12. TFO Sobkowiak asked if he could see a photo identification to which Villarreal produced a Michigan state driver's license bearing his name and likeness. TFO Sobkowiak looked at the license to verify Villarreal's identity and immediately handed the license back to Villarreal. TFO Sobkowiak noted that the photo on the driver's license was the same photo obtained earlier. TFO Sobkowiak also asked Villarreal if he could see his Amtrak boarding pass. Villarreal handed his boarding pass to TFO Sobkowiak. TFO Sobkowiak looked at the boarding pass and returned it to Villarreal.

13. When TFO Sobkowiak asked Villarreal where he was traveling, he stated that he was traveling to Austin, Texas. TFO Sobkowiak asked Villarreal if the purpose of his trip was for business or pleasure. Villarreal stated that his trip was for pleasure and he was going to visit his fiancé. TFO Sobkowiak asked Villarreal if he had any other luggage beside the backpack and duffel bag that he had in his room. Villarreal stated he also had a suitcase on the luggage rack.

14. TFO Sobkowiak asked Villarreal if he packed his own luggage, knew all the items in his luggage, and if all the contents on his person and in his luggage, were his. Villarreal replied "yes" to all three questions. TFO Sobkowiak asked Villarreal if anyone had given him anything to

put in his luggage or on his person to take to Austin, Texas for them. Villarreal answered "no."

15. When TFO Sobkowiak asked Villarreal if he was traveling with any electronic devices, he replied that he had a cell phone. TFO Sobkowiak then asked Villarreal if he had any weapons, illegal drugs, or large amount of cash on him or in his luggage. Villarreal stated "no". Villarreal then stated he had approximately $1,300 in his pocket for travel expenses.

16. When TFO Sobkowiak asked Villarreal if he would consent to a search of his luggage to confirm none of the items discussed, Villarreal looked dazed and began fumbling through his pockets. TFO Sobkowiak asked Villarreal to keep his hands out of his pockets for officer safety issues. Villarreal again put his hands in his pockets, retrieved an inhaler, and used it. TFO Sobkowiak then observed Villarreal sweating heavily from his head. TFO Sobkowiak again asked if Villarreal would consent to a search of his luggage to verify his statements. At the time, Villarreal gave oral consent to search his luggage and handed his backpack and duffel bag to TFO Sobkowiak.

17. TFO Sobkowiak searched Villarreal's backpack with negative results but located numerous bundles of rubber-banded cash concealed inside of several pairs of shoes within the duffel bag. See Government Exhibit A.

18. TFO Sobkowiak asked Villarreal if the currency belonged to him and, if so, why he did not mention the currency when TFO Sobkowiak asked him earlier. Villarreal stated said the cash belonged to him and did not believe he had to tell TFO Sobkowiak that he had the cash despite being specifically asked about it. When TFO Sobkowiak asked Villarreal how he had come to possess the cash, Villarreal would not answer.

19 SA Frankel and TFO Johnson then conducted a search of Villarreal's suitcase and located several more bundles of cash concealed within the clothing. Villarreal stated he had

maybe $17,000 in his luggage.

20. TFO Sobkowiak advised Villarreal that DEA agents would be seizing the U.S. currency pending further investigation but he could obtain a receipt for the seized currency. Villarreal advised TFO Sobkowiak he wanted a receipt, but did not want to miss his train. TFO Sobkowiak advised Villarreal that his train was scheduled to depart in approximately 10 minutes and he would surely miss the train.

21. Villarreal then asked if he was under arrest and if the DEA agents were trying to trick him by making him exit the train to arrest him. TFO Sobkowiak advised Villarreal that he was not under arrest and that he was free to do whatever he wished. Villarreal then stated he wanted a receipt and would exit the train.

22. While walking to the DEA Office at Union Station, TFO Sobkowiak asked Villarreal if he worked and, if so, what he did for a living. Villarreal stated he is a carpet installer and had been for approximately five years. When asked who he worked for, Villarreal said that he works for a friend, but would not identify the friend by name. When asked the last time he had filed state and federal income tax returns, Villarreal replied that it had been several years.

23. On December 4, 2017, Amtrak Police Officer Robert Crowley and drug detector canine, "Gander," conducted a drug odor sniff investigation on the cash and luggage. Gander alerted positive to the presence of an illegal narcotic odors.

24. Drug detector canine "Gander" is owned by the Amtrak Police Department and was last certified prior to this investigation on November 29, 2017 by the State of Illinois. Gander is certified to detect drugs, including the detection of cocaine, heroin, methamphetamine, and marijuana. Over the past several months, Gander has been used in approximately 30 investigations with a success rate of more than 90 percent.

25. The recovered cash totaled $26,575 and was in the following denominations: 20 one hundred dollar bills, 26 fifty-dollar bills, 1,117 twenty-dollar bills, 71 ten-dollar bills, and 5 five-dollar bills.

**Conclusion**

26. For the reasons stated herein and in the attached affidavit, the defendant funds in the amounts of $26,575: (i) were monies furnished and intended to be furnished in exchange for a controlled substance; and/or (ii) are the proceeds from the sale of a controlled substance; and/or (iii) were monies used or intended to be used to facilitate a narcotics transaction in violation of 21 U.S.C. § 841, *et seq.*, and therefore are subject to forfeiture pursuant to 21 U.S.C. § 881(a)(6).

WHEREFORE, the United States of America requests:

    a. the defendant funds be proceeded against for forfeiture and condemnation;

    b. due notice be given to all interested parties to appear and show cause why the forfeiture should not be decreed;

    c. this court adjudge and decree that the defendant funds be forfeited to the United States and disposed of according to law; and

    d. any trial in this matter be before a jury.

Respectfully submitted,

JOHN R. LAUSCH, Jr.
United States Attorney

By:   *s/ Daniel E. May*
DANIEL E. MAY
Assistant United States Attorney
219 South Dearborn Street, 5th Floor
Chicago, Illinois 60604
(312)353-8694
daniel.may@usdoj.gov

NORTHERN DISTRIT OF ILLINOIS )
                                                 ) SS
COUNTY OF COOK )

## AFFIDAVIT

I, Eddy Sobkowiak, having first been duly sworn, upon oath, depose and state as follows:

1. I am a Task Force Officer with the Drug Enforcement Administration and have been so assigned for approximately 19 years. I am also a Sergeant with the McCook, Illinois Police Department and have been employed there for 25 years. My duties and responsibilities as a Task Force Officer with DEA involve investigation of alleged violations of the Controlled Substances Act, Title 21 of the United States Code.

2. I have read the complaint in this matter and the facts alleged are true and correct to the best of my knowledge and belief based upon my own personal knowledge as well as information I have received from other agents, persons and documents, and it does not include each and every fact known to me concerning this investigation but is submitted for the limited purpose of establishing a basis to believe the property identified is subject to forfeiture.

3. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on the 17th of April, 2018, in Chicago, Illinois.

                                                                EDDY SOBKOWIAK
                                                                Task Force Officer
                                                                Drug Enforcement Administration

EXHIBIT A